No. 23-40079

# In the
# United States Court of Appeals
# for the Fifth Circuit

IN RE RICHARD VASQUEZ,

*Movant.*

## ON MOTION FOR AUTHORIZATION TO FILE
## A SUCCESSIVE PETITION FOR A WRIT OF HABEAS CORPUS
## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS, CORPUS CHRISTI
## DIVISION

## RESPONSE IN OPPOSITION

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JOSH RENO
Deputy Attorney General
for Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division

WILLA COCKSHUTT
Assistant Attorney General
*Counsel of Record*
P.O. Box 12548, Capitol Station
Austin, Texas 78711
Tel: (512) 936-1400
Email: *willa.cockshutt@oag.texas.gov*

*Counsel for Respondent*

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in Local Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1.    Richard Vasquez, Movant

2.    Thomas M. Farrell, McGuireWoods LLP, Counsel for Richard Vasquez.

3.    Bobby Lumpkin, Director, Texas Department of Criminal Justice, Correctional Institutions Division, Respondent

4.    Willa Cockshutt, Office of the Attorney General of Texas, Counsel for Bobby Lumpkin

 s/ Willa Cockshutt
WILLA COCKSHUTT
Assistant Attorney General
*Attorney of record for*
*Bobby Lumpkin*

ii

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTERESTED PERSONS ........................................ ii

TABLE OF CONTENTS .......................................................... iii

TABLE OF AUTHORITIES ..................................................... vi

RESPONSE IN OPPOSITION ................................................... 1

STATEMENT OF JURISDICTION ............................................. 2

STATEMENT OF THE ISSUE ................................................. 2

STATEMENT OF THE CASE ................................................... 2

I.     Procedural History ................................................... 2

II.    Facts of the Crime ................................................... 6

III.   Facts Relating to Punishment ....................................... 10

SUMMARY OF THE ARGUMENT ........................................... 11

STANDARD OF REVIEW..................................................... 14

ARGUMENT ..................................................................... 15

I.     Authorization for Claims Eight and Nine Should Be Denied
       Because They Were Presented in a Prior Petition ..................... 15

II.    Vasquez Is Not Entitled to Authorization to File a Successive
       Petition Because He Does Not Show Diligence in Developing
       his Claims or that, but for a Constitutional Error, No

Reasonable Factfinder Would Have Found Him Guilty of Capital Murder..................................................................18

A.    The factual predicates underlying Vasquez's claims could have been discovered previously through the exercise of due diligence.........................................19

      1.    Cocaine Evidence ........................................20

      2.    Junk-Science Evidence .................................24

B.    Vasquez cannot demonstrate that no reasonable factfinder would have found him guilty but for some constitutional error ............................................26

III.    Even If Jurisdiction Exists, Vasquez's Proposed Claims Are Barred by the Statute of Limitations ...........................................29

IV.    Most of Vasquez's Proposed Claims Are Procedurally Defaulted ......................................................35

V.    Vasquez's Claims are Meritless....................................................39

A.    Vasquez cannot demonstrate actual innocence (Claims 1 and 2)........................................................41

B.    Vasquez's right to due process under *Brady* was not violated. (Claim 3).................................................45

C.    The State did not present false evidence. (Claims 4 and 5)........................................................47

D.    Trial counsel's failure to discover the cocaine evidence discrepancy does not present a Sixth Amendment violation. (Claim 6)..................................................49

E.    The State's alleged use of "junk science" presents no constitutional violation. (Claim 7) ........................................ 50

F.    Trial counsel's failure to investigate and counter sex assault evidence (Claim 8) and failure to present mitigating evidence (Claim 9) present no Sixth Amendment violation ............................................................ 54

CONCLUSION ...................................................................... 56

CERTIFICATE OF COMPLIANCE WITH ECF FILING STANDARDS ........................................................................ 57

CERTIFICATE OF COMPLIANCE WITH RULE 32(A) ...................... 57

CERTIFICATE OF SERVICE ................................................... 58

# TABLE OF AUTHORITIES

## *Cases*

*Adams v. Thaler*, 679 F.3d 312 (5th Cir. 2012) ..................................... 14

*Bousley v. United States*, 523 U.S. 614 (1998) ....................................... 42

*Brady v. Maryland*, 373 U.S. 83 (1963) ......................................... *passim*

*Buntion v. Lumpkin*, 31 F.4th 952 (5th Cir. 2022) ................................ 16

*Canales v. Stephens*, 765 F.3d 551 (5th Cir. 2014) ............................... 38

*Cantu v. Davis*, 665 F. App'x 384 (5th Cir. 2016) .................................. 37

*Clark v. Thaler*, 673 F.3d 410 (5th Cir. 2012) ...................................... 55

*Coleman v. Thompson*, 501 U.S. 722 (1991) ................................... 35, 51

*Crawford v. Cain*, 55 F.4th 981 (5th Cir. 2022) ..................................... 41

*Cullen v. Pinholster*, 563 U.S. 170 (2011) ....................................... 54, 55

*Davila v. Davis*, 137 S. Ct. 2058 (2017) ............................................... 37

*Ex parte Chabot* 300 S.W.3d 768 (Tex. Crim. App. 2009) ....................... 4

*Ex parte Elizondo*, 947 S.W.2d 202 (Tex. Crim. App. 1996) .................. 42

*Ex parte Kussmaul*, 548 S.W.3d 606 (Tex. Crim. App. 2018) ..... 51, 52, 53

*Felker v. Turpin*, 518 U.S. 651 (1996) ............................................ 14, 15

*Fisher v. Johnson*, 174 F.3d 710 (5th Cir. 1999) .................................. 30

*Flanagan v. Johnson*, 154 F.3d 196 (5th Cir. 1998) ................................. 30

*Ford v. Davis*, 910 F.3d 232 (5th Cir. 2018) ..................................... 51, 52

*Garza v. Stephens*, 738 F.3d 669 (5th Cir. 2013) ................................... 37

*Guidry v. Lumpkin*, 2 F.4th 472 (5th Cir. 2021) ........................ 35, 45, 46

*Gutierrez v. Stephens*, 590 F. App'x 371 (5th Cir. 2014) ........................ 35

*Harrington v. Richter*, 562 U.S. 86 (2011) ....................................... 39, 40

*Herb v. Pitcairn*, 324 U.S. 117 (1945) ................................................ 51

*Herrera v. Collins*, 506 U.S. 390 (1993) .......................................... 12, 42

*In re Cain*, 137 F.3d 234 (5th Cir. 1998) ............................................ 19

*In re Campbell*, 750 F.3d 523 (5th Cir. 2014) ...................................... 29

*In re Coleman*, 768 F.3d 367 (5th Cir. 2014) ....................................... 17

*In re Davila*, 888 F.3d 179 (5th Cir. 2018) ................................ 16, 17, 30

*In re Mathis*, 483 F.3d 395 (5th Cir. 2007) ......................................... 29

*In re Sharp*, 969 F.3d 527 (5th Cir. 2020) .......................................... 16

*In re Webster*, 605 F.3d 256 (5th Cir. 2010) ........................................ 17

*In re Young*, 789 F.3d 518 (5th Cir. 2015) .......................................... 30

*Johnson v. Dretke*, 442 F.3d 901 (5th Cir. 2006) ............................... 19, 27

*Kinsel v. Cain*, 647 F.3d 265 (5th Cir. 2011) ....................................... 48

*Kutzner v. Cockrell*, 303 F.3d 333 (5th Cir. 2002) .................................. 46

*Lucas v. Johnson*, 132 F.3d 1069 (5th Cir. 1998) ................................. 42

*Martinez v. Ryan*, 566 U.S. 1 (2012) ................................................ 37, 51

*Matchett v. Dretke*, 380 F.3d 844 (5th Cir. 2004).................................... 35

*McQuiggin v. Perkins*, 569 U.S. 383 (2013) ............................... 12, 34, 42

*Moore v. Dretke*, 369 F.3d 844 (5th Cir. 2004) ......................................... 19

*Murphy v. Davis*, 901 F.3d 578 (5th Cir. 2018) ..................................... 45

*Neal v. Puckett*, 286 F.3d 230 (5th Cir. 2002)........................................ 40

*Osborne v. Hall*, 934 F.3d 428 (5th Cir. 2019) ..................................... 30

*Owens v. Boyd*, 235 F.3d 356 (7th Cir. 2000).......................................... 30

*Pace v. DiGuglielmo*, 544 U.S. 408 (2005) .................................. 26, 27, 28

*Palacios v. Stephens*, 723 F.3d 600 (5th Cir. 2013) ................................ 34

*Pierre v. Vannoy*, 891 F.3d 224 (5th Cir. 2018) *as revised* (Jun. 7, 2018), *cert. denied*, 139 S. Ct. 379 (2018)................................................ 48

*Pippin v. Dretke*, 434 F.3d 782 (5th Cir. 2005) ........................... 51, 52, 53

*Prible v. Lumpkin*, 43 F.4th 501 (5th Cir. 2022) ............................... 45, 47

*Reed v. Stephens*, 739 F.3d 753 (5th Cir. 2014) ................................ 41, 45

*Rhines v. Weber*, 544 U.S. 269 (2005) ...................................................... 26

*Roberts v. Cockrell*, 319 F.3d 690 (5th Cir. 2003)................................... 32

*Sawyer v. Whitley*, 505 U.S. 333 (1992) ................................................ 27

*Schlup v. Delo*, 513 U.S. 298 (1995) ...................................................... 42

*Strickland v. Washington*, 466 U.S. 668 (1984) .................................... 37

*Teague v. Lane*, 489 U.S. 288 (1989) ..................................................... 48

*Trevino v. Thaler,* 569 U.S. 413 (2013) ................................................. 36

*Turner v. Epps,* 460 F. App'x 322 (5th Cir. 2012) ................................. 17

*United States v. Bagley*, 473 U.S. 667 (1985) ........................................ 47

*United States v. Jones*, 172 F.3d 381 (5th Cir. 1999) ............................ 42

*Wainwright v. Sykes*, 433 U.S. 72 (1977) ............................................... 51

*Williams v. Taylor*, 529 U.S. 362 (2000) ............................................... 39

*Woodford v. Visciotti*, 537 U.S. 19 (2002) ............................................. 40

*Ylst v. Nunnemaker*, 501 U.S. 797 (1991) .............................................. 35

**Statutes**

28 U.S.C. § 2244(b) .................................................................... 2, 14, 15,

28 U.S.C. § 2244(b)(1).................................................................. *passim*

28 U.S.C. § 2244(b)(2)........................................................................ 18

28 U.S.C. § 2244(b)(2)(B)............................................................. *passim*

28 U.S.C. § 2244(b)(2)(B)(i) ......................................................... *passim*

28 U.S.C. § 2244(b)(2)(B)(ii) ........................................................ 13, 26, 28

28 U.S.C. § 2244(b)(3)(A) ................................................................ 2, 14

28 U.S.C. § 2244(b)(3)(C) ..................................................................... 15

28 U.S.C. § 2244(d) ............................................................................. 13

28 U.S.C. § 2244(d)(1)(A) .................................................................... 31

28 U.S.C. § 2244(d)(1)(B) .................................................................... 30

28 U.S.C. § 2244(d)(1)(C) .................................................................... 30

28 U.S.C. § 2244(d)(1)(D) ......................................................... 29, 30, 31

28 U.S.C. § 2244(d)(2) .................................................................. 31, 32

28 U.S.C. § 2254 ................................................................................. 15

28 U.S.C. § 2254(e)(1) ......................................................................... 51

42 U.S.C. § 1983 .................................................................................. 4

## Other Authorities

Tex. Code Crim. Proc. art. 11.073 (West 2013) .................................. 25, 34

## RESPONSE IN OPPOSITION

Movant Richard Vasquez was properly convicted and sentenced to death in 1999 for the murder of Miranda, his girlfriend's four-year-old daughter. Vasquez has challenged his conviction and sentence in state and federal court. He filed his initial federal habeas petition in 2006, and those federal habeas proceedings concluded in 2011 when the Supreme Court denied his petition for a writ of certiorari. *Vasquez v. Thaler*, 389 F. App'x 419, 432 (5th Cir. 2010), *cert. denied*, 563 U.S. 991 (2011).

Vasquez now seeks authorization from this Court to file in the district court a successive petition. *See generally* Motion for Order Authorizing Consideration of a Subsequent Petition for Writ of Habeas Corpus (Motion). But Vasquez's proposed petition is impermissibly successive because his claims do not satisfy 28 U.S.C. § 2244(b)(2)(B). Further, the claims Vasquez raises in his proposed successive petition are time-barred and meritless, and the majority are procedurally defaulted. Therefore, this Court should deny Vasquez's Motion.

1

## STATEMENT OF JURISDICTION

This Court has jurisdiction to consider Vasquez's Motion. 28 U.S.C. § 2244(b)(3)(A).

## STATEMENT OF THE ISSUE

The only issue before this Court is whether the successor petition Vasquez seeks authorization to file in the district court is impermissibly successive under 28 U.S.C. § 2244(b).

## STATEMENT OF THE CASE

### I.    Procedural History

Movant Richard Vasquez was convicted and sentenced to death in 1999 for the murder of Miranda, his girlfriend's four-year-old daughter. 1 Clerk's Record (CR) 2–3. Vasquez appealed his conviction and death sentence to the Texas Court of Criminal Appeals ("TCCA"), which affirmed. *Vasquez v. State*, No. 73,461 (Tex. Crim. App. Oct. 3, 2001). Vasquez filed a state application for writ of habeas corpus while his direct appeal was pending, followed by an Amended and Supplemental

Application for Writ of Habeas Corpus. *See* SHCR-01[1] at 122 (receipt acknowledged on June 27, 2001); SHCR-02 at 2 (file-stamped March 27, 2003). The TCCA denied habeas relief on all claims raised in Vasquez's first application, then dismissed his amended application as an abuse of the writ. *Ex parte Vasquez*, Nos. WR-59,201-01, WR-59,201-02, 2005 WL 287504 (Tex. Crim. App. Jan. 26, 2005).

In 2006, Vasquez petitioned for federal habeas relief; the district court denied relief but granted a certificate of appealability (COA) on Vasquez's claim that he received ineffective assistance of counsel. *Vasquez v. Quarterman,* Civ. No. CC-05-059, 2008 WL 859147, at *15 (S.D. Tex. Mar. 28, 2008). This Court affirmed, and the Supreme Court denied certiorari review. *See Vasquez v. Thaler*, 389 F. App'x at 432.

Vasquez was set to be executed on April 23, 2015. He filed his third state habeas application on April 15, 2015, and a motion for stay of execution on April 17, 2015, in state court. 1 SHCR-03 at 15, 207. The TCCA granted Vasquez's motion for stay, pending resolution of Vasquez's

---

[1]    "SHCR" refers to the state habeas clerk's record in *Ex parte Vasquez*, Nos. WR-59,201 -01, -02, -03, or -04, followed by the relevant page number and preceded by volume number as necessary.

state habeas claims. *Ex parte Vasquez*, No. WR-59,201-03, 2015 WL 1853758, at *1 (Tex. Crim. App. Apr. 20, 2015). After remand by the TCCA for review on the merits, the trial court held a hearing in 2019, then entered findings of facts and conclusions of law, recommending the TCCA deny relief on the two claims Vasquez elected to pursue after abandoning his claim of actual innocence. *Ex parte Vasquez*, 2016 WL 8808823, at *1; 2 Supp. SHCR-03; *see Vasquez*, 2021 WL 3746008, at *1.[2] The TCCA adopted those findings and conclusions, then denied relief on the two remanded claims and dismissed his allegation of actual innocence. *Vasquez*, 2021 WL 3746008, at *1.[3]

---

[2]    The remanded claims alleged:
    (1) pursuant to Article 11.073, "there is new scientific evidence that he did not cause the death of [M.L] that was not available at trial and the new scientific evidence contradicts scientific evidence relied on by the state at trial" (Claim 1); [and] (2) the State obtained his conviction and sentence with evidence that is now known to be false, in violation of his due process rights and *Ex parte Chabot* [300 S.W.3d 768 (Tex. Crim. App. 2009) (Claim 2)[.]
*Ex parte Vasquez*, 2021 WL 3746008, at *1.
[3]    On January 24, 2022, Vasquez filed in the district court a complaint pursuant to 42 U.S.C. § 1983 alleging a violation of his due process rights from the TCCA's resolution of his article 11.073 claims. *Vasquez v. Collier,* No. 2:22-cv-00012 (S.D. Tex); ECF 1. On July 8, 2022, the district court dismissed the compliant with prejudice, ECF 12, and, pursuant to Vasquez's own motion, this Court dismissed his appeal of that decision. *Vasquez v. Collier,* No. 22-70008 (5th Cir. 2022).

Vasquez filed a fourth state habeas application on January 12, 2022, raising six new claims, followed by an amended subsequent state habeas application on January 26, 2022. SHCR-04 at 4; Supp. SHCR-04 at 4. On December 14, 2022, the TCCA dismissed this subsequent application as an abuse of the writ without considering the merits of the claims. *Ex parte Vasquez*, No. WR-59,201-04, 2022 WL 17660560, at *2 (Tex. Crim. App. Dec. 14, 2022).

On February 26, 2022, while his fourth state habeas application was pending, Vasquez filed a Motion for Relief from Judgment under Rule 60(b)(6) in the district court, asserting that the initial judgment was procured through fraud. The district court dismissed the motion, and this Court denied COA, *Vasquez v. Lumpkin*, No. 22-70009, 2023 WL 2238995, at *1, 3 (5th Cir. Feb. 24, 2023).

Vasquez filed the instant motion for authorization on February 8, 2023, containing the two ineffective-assistance-of-trial-counsel claims already denied on the merits by the district court; one claim similar to that raised in his second subsequent writ and denied on the merits by the TCCA in 2021, *see Ex parte Vasquez,* No. 59,201-03, Order at *2–3; and

5

the six claims filed in his third subsequent writ in 2022, but dismissed by the TCCA as an abuse of the writ, *see Ex parte Vasquez*, 2022 WL 17660560, at *2. The Director opposes this motion.

## II. Facts of the Crime

In reviewing Vasquez's allegation that insufficient evidence supported the jury's finding of future dangerousness, the TCCA summarized the evidence as follows:

> Vasquez, who was eighteen years old, was living with his parents; his girlfriend, Brenda Lopez; their four-month-old child, Meagan; and Brenda's four-year-old child, Miranda. Vasquez had a serious addiction to heroin and cocaine which had begun when he was thirteen. Although his parents made numerous efforts to help him with his drug problem, Vasquez remained clean only for a short period of time and invariably reverted to his drug use.

> By March 1998, Vasquez and Brenda had become so addicted to drugs that according to Vasquez, they stopped caring about themselves, the children, or anything else except drugs. They would leave the children anywhere so they could go out and steal things to sell in order to buy more drugs. Vasquez would become infuriated when the drugs ran out and he did not have any more money to feed his habit.

> According to Vasquez, he and Brenda argued throughout the night of March 4th, during which time he injected himself with heroin and cocaine before falling asleep in the early morning hours of March 5th. Vasquez injected himself with heroin again at 10:30 a.m. before taking Brenda to work between 11 a.m. and noon. Vasquez drove Brenda to

work while the children sat in the back seat of the car. On the way, Vasquez got angry with Brenda because he had to watch the children and would not be able to go steal more things to sell for drugs.

After Vasquez and the children returned home, sometime during the late morning, Vasquez's neighbor saw a child Miranda's age playing in the backyard. After about 10–15 minutes, she heard a loud, angry voice coming from Vasquez's door. She saw Vasquez standing there and heard him say to the girl in Spanish, "You're going to get it, stupid." Vasquez denied that this incident ever occurred.

According to Vasquez's testimony at trial, after he dropped Brenda off, he and the children returned home and Vasquez needed a fix. He called Brenda to ask her where the heroin was and Brenda would not tell him. This angered Vasquez and although Vasquez acknowledged that Miranda was not doing anything wrong, he struck her in the head. He could not say how many times he hit her. He then called Brenda again, who told him where the drugs were and he injected another round of heroin. He told Miranda to go get a stool from his parents' room and brush her teeth. When Miranda came back with the stool, Vasquez claimed that Miranda fell down. He put toothpaste on her toothbrush and left the room. When he came back, Miranda was face down in the sink. He repeatedly tried to make her stand, but she kept falling down. He then put her on his parents' bed and called "911" around 1:30 p.m., telling the dispatcher that Miranda was choking. When the deputy constable and the emergency medical technicians arrived at the house, Vasquez said that Miranda had fallen off a wooden stool and hit her head. No wooden stool was in the area, although one was later found next to the bed where Vasquez placed Miranda. Miranda had

blood on her nose and mouth which Vasquez claimed was a result of Miranda biting him when he put his fingers in her mouth to prevent her from swallowing her tongue. The paramedics also noted that Miranda had a bump on the back of her head, noticeable bruises in various stages on her back, and bruising around her eyes which indicated a possible head injury. Miranda was taken to the hospital. In the meantime, Vasquez called Brenda and told her that Miranda had fallen off of a stool and hit her head. He picked up Brenda at work and they headed to the hospital—both injecting heroin on the way.

It was determined by Dr. Michael Burke, a pediatric neurosurgeon who performed brain surgery on Miranda, that Miranda suffered from trauma to the head. He testified that her brain injuries were equivalent to those she would have sustained had she been ejected from a car traveling 65 m.p.h.[ ]. Burke's final diagnosis was that Miranda suffered severe brain injury from child abuse. Leann Box, a sexual assault nurse, examined Miranda at 7 p.m. and noted that she had extensive bruising on her head, face chest, hips, pelvic region, genitalia area, ankle, thigh, shoulder, back, and arms. Some of these bruises were formed from injuries made within the previous twelve to twenty-four hours. The bruising on Miranda's hips were consistent with injuries that could be caused from being held from behind while being sexually assaulted.

Box also performed a detailed genital exam. Miranda had multiple abrasions and tears in her genital-anal region. Many of the tears were the result of injuries that had occurred no more than twelve hours earlier. Miranda had a two-centimeter tear between her anus and labia minora that was approximately one-half-centimeter deep (just short of

muscle tissue). In over 200 sexual assault examinations, Box had never seen a tear this thick. This type of tear would be caused from a great deal of force and would have likely bled a great deal. Box testified that the tear was not bloody when she examined Miranda which led her to believe that it had been cleaned. Although extremely painful, rubbing alcohol and pressure could have stopped the bleeding.

Vasquez was arrested and crime scene technicians photographed him, noting the bruising on his hand, fresh cuts to his thumb and finger, and needle marks on his arms. At Vasquez's home, officers and the crime scene technicians found blood on the wall and shower curtain in the bathroom where Miranda allegedly fell. There was a bottle of rubbing alcohol on a night stand and the bed next to it was damp. A child's blood stained t-shirt and coveralls were found in the clothes hamper, which Vasquez's father said he put there after finding them in the house. After searching the garage, the crime scene personnel found two syringes, the cap to the tube of toothpaste, a hair brush, a long black hair, toilet paper with blood on it, and tissue paper that appeared saturated with rubbing alcohol inside of a garbage can in a plastic bag. Vasquez's father testified that he had taken the trash out of the bathroom and put it in the garbage can.

A pediatrician who helped establish a clinic for examining sexual assault victims testified as an expert witness. He summarized his findings by stating in his twenty years of practice, "This is really one of the most severe sexual assaults that I have ever seen in my career."

Additionally, the Nueces County Medical Examiner testified that an analysis of Miranda's blood indicated a potentially lethal amount of cocaine in her system. It was

double the amount lethal for an adult. The doctor could not determine how the cocaine got into Miranda's body.

Vasquez could not explain the bruising, genital-anal injuries, or the cocaine.  He denied sexually assaulting Miranda or giving her the drugs.  But Vasquez did admit that he was the only adult in the house that morning and that he had struck Miranda in the head.

*Vasquez v. State*, No. 73,461, slip op. at 3–10.

## III.  Facts Relating to Punishment

The TCCA summarized the punishment evidence as follows:

. . . [D]uring the punishment phase, the State put on evidence that Vasquez had been verbally abusive and a discipline problem in school. Although the principal spoke with Vasquez's parents, the situation did not change. In another incident, Vasquez set a fire in an area of the school that had only one entrance and no windows. Additionally, Vasquez had been convicted of theft and burglary of a motor vehicle and had two theft cases pending at the time of trial. Vasquez's former probation officer testified that Vasquez failed to report, failed to comply with other conditions of his probation, and generally had a very poor attitude concerning his probation. Vasquez also consistently denied that he had a drug problem.

Rita Hunter, Miranda's pre-school teacher, also testified at punishment that one time when Vasquez came early to pick up Miranda, he closed the classroom door and prevented Miranda from exiting. When Hunter managed to open the door, Vasquez put his hand on her shoulder and began rubbing it down her back. When Hunter told Vasquez to get away, Vasquez began following Hunter around the room in front of her young students, laughing and putting his hands all over her body, including on her chest and between her legs.

Eventually he pushed Hunter to the ground and straddled her. Only when a janitor happened to walk by did Vasquez get off of Hunter and leave with Miranda. . . .

. . .

. . . [Defense psychiatrist Dr. Carlos Estrada testified that he had examined Vasquez and that Vasquez's behavior was typical of drug abusers. He stated that most addicts, after a period of sobriety and rehabilitation, no longer show the antisocial tendencies and behavior that they exhibited while taking drugs. Estrada also opined that Vasquez would not be a danger to society in a secure setting where he was denied drugs; but, he noted that when one had become as dependent upon drugs as Vasquez, any amount of drugs would cause him to resume his prior behavior. On cross-examination, Dr. Estrada conceded that it was common knowledge that drugs and other contraband make their way into prisons. In rebuttal, State's psychiatrist, Dr. Joel Kutnick testified that considering Vasq[ue]z's drug abuse history, it was unlikely that Vasquez would ever give up drugs, particularly in light of the fact that past efforts at treatment had failed.

*Vasquez v. State*, No. 73,461, slip op. at 3–10 .

## SUMMARY OF THE ARGUMENT

Vasquez is not entitled to authorization to file a successive habeas petition raising the claims he proposes. In his proposed subsequent writ, Vasquez alleges the following: (1) that he is actually innocent of capital

murder[4]; (2) that he is actually innocent of the death penalty[5]; (3) that the State failed to disclose exculpatory information related to the cocaine evidence in violation of *Brady*[6]; (4) that the State knowingly presented false cocaine evidence in violation of the Due Process Clause; (5) that the State unknowingly presented false cocaine evidence in violation of the Due Process Clause; (6) that his trial counsel was ineffective for failing to discover that the cocaine evidence was false; (7) that "junk science" regarding the force of the blows to Miranda's head materially affected his conviction and sentence in violation of the Due Process Clause; (8) that his trial counsel was ineffective for failing to investigate and counter evidence of sexual assault; and, (9) that his trial counsel was ineffective for failing to investigate and present mitigating evidence. Movant's Ex. 1 at ii–iii, 4–6.

Because Vasquez brought proposed claims Eight and Nine in his first federal habeas petition, those claims should be dismissed under 28

---

[4]     Such an argument does not state a claim for relief. *Herrera v. Collins*, 506 U.S. 390, 404–05 (1993). Rather, a showing of actual innocence may allow a petitioner to avoid procedural barriers to have his claims heard on the merits. Consequently, the Director does not construe Vasquez's argument of actual innocence to state a claim for relief but rather as an argument to satisfy § 2244(b)(2)(B) and to avoid the one-year statute of limitations. *See McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013).

[5]     *See* fn. 4, *supra*.

[6]     *Brady v. Maryland*, 373 U.S. 83(1963).

U.S.C. § 2244(b)(1). *Vasquez v. Quarterman*, 2008 WL 859147, at *1.. Vasquez also cannot demonstrate that the factual predicate of his claims could not have been discovered through the exercise of reasonable diligence, as required by § 2244(b)(2)(B)(i).  And none of his proposed claims demonstrate that, but for a constitutional error, no reasonable juror would have found him guilty of capital murder. *See* § 2244(b)(2)(B)(ii). In light of the strength of the evidence of Vasquez's guilt, he cannot make a prima facie showing that he is actually innocent. Therefore, he is not entitled to authorization under § 2244(b)(2)(B).

Further, each of Vasquez's proposed claims are time-barred. *See* § 2244(d). The factual predicate for Vasquez's proposed cocaine-evidence claims has existed since his trial in 1999. Even with the benefit of years of tolling during the pendency of Vasquez's state court proceedings, these proposed claims are time-barred. And Vasquez's proposed junk-science claims are also untimely. The scientific basis for the claims has been in development for many years, and Vasquez's significant delays in pursuing relief render the claim time-barred.

In addition, all but two of the claims are procedurally defaulted under Texas's abuse of the writ doctrine, and all of his proposed claims are without merit. Consequently, Vasquez's Motion should be denied.

## STANDARD OF REVIEW

A habeas petitioner must "obtain leave from the court of appeals before filing a second habeas petition in the district court." *Adams v. Thaler*, 679 F.3d 312, 321 (5th Cir. 2012); *see Felker v. Turpin*, 518 U.S. 651, 664 (1996); 28 U.S.C. § 2244(b)(3)(A). Under § 2244(b),

(1) A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed.

(2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless-

    (A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

    (B)

        (i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and

> > (ii)  the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2244(b).  As discussed below, Vasquez's Motion fails to make a prima facie showing that he satisfies the requirements of § 2244(b). *See* 28 U.S.C. § 2244(b)(3)(C).

## ARGUMENT

### I. Authorization for Claims Eight and Nine Should Be Denied Because They Were Presented in a Prior Petition.

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), "a claim presented in a second or successive habeas corpus application under [28 U.S.C.] section 2254 that was presented in a prior application shall be dismissed." 28 U.S.C § 2244(b)(1). In proposed claims eight and nine, Vasquez contends that his trial counsel was ineffective for failing to investigate and counter the evidence of sexual assault and for failing to investigate and present "available mitigating evidence." Movant's Ex. 1 at 5–6. As Vasquez concedes, these claims have "already been adjudicated" in Vasquez's original federal habeas petition. *Id.*;

*Vasquez v. Quarterman*, 2008 WL 859147, at \*2. Relying on the state court findings and testimony from the state habeas hearing, the district court found that the state court had reasonably denied Vasquez's ineffective-assistance claims. *Id.*[7] If a petitioner seeks to raise a claim brought in a prior federal habeas petition, authorization must be denied. § 2244(b)(1); *In re Davila*, 888 F.3d 179, 182 (5th Cir. 2018); *Buntion v. Lumpkin*, 31 F.4th 952, 961 (5th Cir. 2022) (holding a claim "shall be dismissed" if it was presented in a prior application) (citing § 2244 (b)(1)); *In re Sharp*, 969 F.3d 527, 528 (5th Cir. 2020) ("Any attempt to [raise a previously raised claim in a successive petition] is strictly barred by § 2244 (b)(1), which admits of no exceptions.)"

Vasquez contends that these claims can be resurrected in his proposed subsequent petition due to "new evidence." Movant's Ex. 1 at 5–6, 58–61. Vasquez argues that this "new evidence," that "the evidence of cocaine in Miranda's system was false, as was the evidence on car-crash equivalency," "seriously undermines the Court's prior conclusion" and denial of these claims. *Id.* at 59. Supplementing a previously-raised claim

---

[7]     These issues were the subject of a Rule 60(B) motion for relief from judgment, which the district court denied as an unauthorized successive petition, and this Court recently denied a COA on that decision.

with new evidence does not resurrect his claim. *See In re Coleman*, 768
F.3d 367, 373 & n.24 (5th Cir. 2014) ("In this sense, [the petitioner] raises
new *facts*, but not a new *claim*. We have held that such situations count
as the 'same claim' for purposes of this section.").

Even if Vasquez could escape the mandatory prohibition contained
in § 2244(b)(1), he still cannot overcome the bar to successive review
contained in § 2244(b)(2)(B). *See In re Coleman*, 768 F.3d at 373. As will
be discussed below, the "new evidence" "could have been discovered
through the exercise of due diligence" and would not have been "sufficient
to establish by clear and convincing evidence that, but for constitutional
error, no reasonable factfinder would have found [Vasquez] guilty of the
underlying offense." § 2244(b)(2)(B).

This Court's precedent also precludes claims of actual innocence of
the death penalty to permit a successive petition. *See In re Davila*, 888
F.3d at 186 (acknowledging precedent holding that " 'a petitioner cannot
bring a successive claim' under Section 2244(b)(2)(B) 'where he does not
assert that the newly discovered evidence would negate his guilt of the
offense of which he was convicted, *i.e.*, capital murder.' ") (citing *In re
Webster*, 605 F.3d 256, 258-59 (5th Cir. 2010)); *Turner v. Epps*, 460 F.

App'x 322, 330 (5th Cir. 2012) (Section 2244(b)(2) "only permits a successive habeas petition where the petitioner produces new evidence casting doubt on whether he is 'guilty of the underlying offense.' We have concluded that this provision does not extend to evidence casting doubt on the validity of a prisoner's sentence."). Therefore, authorization must be denied for claim nine.

## II. Vasquez Is Not Entitled to Authorization to File a Successive Petition Because He Does Not Show Diligence in Developing his Claims or that, but for a Constitutional Error, No Reasonable Factfinder Would Have Found Him Guilty of Capital Murder.

Vasquez also fails to demonstrate that he satisfies the conjunctive two-part test in 28 U.S.C. § 2244(b)(2)(B)(i)–(ii). Specifically, Vasquez fails to show that the factual predicates of his claims could not have been found earlier. 28 U.S.C. § 2244(b)(2)(B)(i). Vasquez also fails to present clear and convincing evidence that no reasonable factfinder would have found him guilty but for some constitutional error. 28 U.S.C. § 2244(b)(2)(B)(i)–(ii). Since Vasquez's claims do not satisfy either component of the two-part test in § 2244(b)(2)(B), this Court should deny Vasquez's Motion for Authorization.

## A. The factual predicates underlying Vasquez's claims could have been discovered previously through the exercise of due diligence.

To satisfy the first requirement of the two-part test, Vasquez must show that the factual predicates of his claims could not have been discovered earlier through the exercise of due diligence. 28 U.S.C. § 2244(b)(2)(B)(i). "[T]he plain text of § 2244(b)(2)(B) suggests that due diligence is measured against an objective standard, as opposed to the subjective diligence of the particular petitioner of record. The burden to make such a showing, of course, remains the petitioner's." *Johnson v. Dretke*, 442 F.3d 901, 908 (5th Cir. 2006) (citing *Moore v. Dretke*, 369 F.3d 844, 846 (5th Cir. 2004)). Although "[a] prisoner's application is not second or successive simply because it follows an earlier federal petition," it is the well-settled law of this circuit that "a later petition is successive when it: (1) raises a claim challenging the petitioner's conviction or sentence that was or *could have been raised in an earlier petition*; or (2) otherwise constitutes an abuse of the writ." *In re Cain*, 137 F.3d 234, 235 (5th Cir. 1998) (emphasis added). Here, Vasquez fails to meet his burden.

### 1.   Cocaine Evidence

Vasquez contends that the factual predicate for his cocaine-evidence claims "could not have been discovered previously through the exercise of due diligence." Motion at 4. But the fact of the matter is that the toxicology report, which contains the complained-of discrepancy between "Drugs of Abuse Screen" and "Confirmed GC/MS,"[8] has been available since before Vasquez's trial. *See* CR 406. This discrepancy and purported error could have been discovered any time after the report's creation, and certainly before Vasquez filed his first and second state writ applications and his petition for federal habeas relief.

Counsel avers that he took over Vasquez's case in July of 2016 but did not "initially investigate whether the Toxicology Report accurately

---

[8]     Vasquez did not raise these cocaine-related claims in his third state habeas application, but he did present this evidence at the evidentiary hearing. The trial court made the following finding, which was adopted by the CCA:

> [T]he Toxicology report states that the screen test of Miranda's blood was negative for drugs of abuse. Following protocol, the testing should have stopped there. But, without explanation in the trial record, a confirmation test was done, and the result showed that her blood test was positive for cocaine and benzoylecgonine, a metabolite of cocaine, and that she had a significant amount of cocaine and its metabolite in her blood. Apparently, at trial, neither the State nor the defense noted the obvious inconsistency between the screen result and the confirmation result, and neither side examined Dr. White or Dr. Backer on the inconsistency. The end result is that the jury heard that cocaine was in Miranda's blood.

3 SHCR-03 646 (no. 259).

reflected the level of cocaine in Miranda's system." Movant's Ex. J at 454–56 (nos. 3, 8). He avers that "nothing on the face of the Toxicology Report . . . gave us any reason to do so." *Id.* at 456 (no. 8). It wasn't until counsel consulted with their own toxicologist, Dr. Jimmie Valentine, and tracked down Dr. Ronald Backer, the toxicologist who signed the toxicology report, that counsel discovered the complained-of discrepancy. *See id.* at 457–58 (no. 12). And Vasquez's trial counsel has averred that "we did not understand that this conflict existed in the Toxicology Report," and "we were not aware that the 'Drugs of Abuse Screen' included cocaine." Movant's Ex. K at 463 (no. 10). Vasquez's counsel in his first state habeas application also averred that he was unaware of the discrepancy and unaware that "Drugs of Abuse Screen" would measure for cocaine. Movant's Ex. L at 470–71 (nos. 8–9).

But due diligence is measured against an objective standard, and these declarations do not excuse the fact that the vital and principal evidence for these claims—the discrepancy itself—was plain on the face of the toxicology report and could have been discovered, whether by counsel or a defense expert, at any point in the twenty years between Vasquez's trial and Dr. Backer's report. Movant's Ex. J at 441–42.

Vasquez's exhibit "Notes from Interview with Donna Trautman Senior Toxicologist" supports the conclusion that counsel could have discovered the complained-of discrepancy in 1999, prior to trial. Movant's Ex. N at 489. In this work product, it is noted that the "initial screening . . . just shows positive or negative for drugs" and the chromatography "identifies the drug." *Id.* The relationship between Drugs of Abuse Screen as a general, binary test, and Confirmed GC/MS as the specific test, was therefore known in 1999. The discovery of a discrepancy flows from this distinction. And the Director suggests that cocaine's inclusion in the umbrella term "Drugs of Abuse" is self-evident.

Although prior counsel have been willing to fall on their sword for Vasquez, the state habeas court was able to discern the most likely explanation for the complained-of discrepancy and explain why the specific finding overrules the general:

> 293. In this post-conviction proceeding, [Vasquez] presented no evidence that the results of the subsequent test were not true other than the entry of "Negative" in the Toxicology Report.
> 294. Dr. Valentine's own argument disproves, or, at a minimum casts doubt, on his view that the confirmation of cocaine in Miranda is false evidence. For example, when he said that, because the confirmation tests showed a presence for cocaine in Miranda's blood, then the screen test "should have presumptively detected cocaine." Stated another way,

the screen test result was false and the confirmation result was true. He also stated that, because the findings for cocaine were higher than the cut-off basis for a positive finding, the "blood specimen should have produced a presumptive positive [and] not the recorded negative finding." Once again, the screen test result was false and the confirmation result was true.

295. Dr. Valentine also reiterated that "Because no cocaine metabolite was indicated" in the screen test, "the GC/MS should not have indicated a combined concentration ... for cocaine and metabolite." In other words, "the GC/MS results should have been negative." But, because the GC/MS results were positive indicating a combined concentration for cocaine and its metabolite, then the screen test was false.

296. Although the State presented no evidence in this post-conviction proceeding, no evidence was presented to show that the "Negative" entry on the screen test portion of the Toxicology Report was anything other than a clerical error, in light of the lack of any evidence that the results of the subsequent or confirmation tests were not true and the overwhelming evidence that the results of the subsequent or confirmation tests were true.

297. Despite the conflicting findings in the Toxicology Report, the overwhelming evidence shows that there was cocaine in Miranda's blood. The entry of a negative finding is not true.

298. The evidence from Dr. Backer that the confirmation tests showed that cocaine and its metabolite were present in Miranda's blood is reliable and credible evidence.

299. The evidence from Dr. White based on the confirmation tests results from Dr. Backer's report that showed that cocaine and its metabolite were present in Miranda's blood is reliable and credible evidence.

3 SHCR-03 653 (nos. 293–99). The TCCA adopted these findings. SHCR-03 Order Denying Relief (August 25, 2021). Vasquez has not borne his burden of showing that he exercised due diligence in discovering and

ferreting out the alleged significance of the complained-of discrepancy. *See* Motion at 4–5. The cocaine-evidence claims (one, two, three, four, five, and six) should therefore not be authorized under § 2244(b)(2)(B)(i).

### 2.   Junk-Science Evidence

In his proposed subsequent petition, Vasquez contends that the "State was relegated to the use of junk science that has been thoroughly debunked in the years since Vasquez's trial." Movant's Ex. 1 at 30. This purported junk-science evidence is Dr. Michael Burke's testimony comparing Miranda's brain injury to a high-speed motor vehicle incident and his testimony that a short fall from a bathroom stool could not have caused Miranda's brain injury. *Id.* at 30–33.

The factual predicate for Vasquez's junk-science claims—the purported "truth about car-crash equivalency and short falls"—could have been discovered well before Vasquez's filing of the instant motion, his Rule 60(b) motion, and his third state writ application through the exercise of due diligence. *Id.* at 34. In support of his claims that the State used junk science to convict him, Vasquez points to "the 2006 Fourth Edition of an authoritative text (Medicolegal Investigation of Death)," "Shaken Baby Syndrome, Abusive Head Trauma, and Actual Innocence:

Getting it Right (2012)," a 2006 retraction by NAME of a Position Paper associating fatal brain injuries in children with motor vehicle accidents and falls from considerable height, and various other studies from 2004, 2005, 2008, 2009, 2011, 2014, and 2019, among others. *Id.* at 34–37; *see* Movant's Ex. D-1 at 25–344; Movant's Ex. D-3–D-6, D-8, D-10–D-14. By Vasquez's own admission, then, at the time the Texas legislature passed the so-called "junk science writ" provision in 2013, there was a plethora of scientific research available that Vasquez alleges substantiate the instant junk-science claims. Tex. Code Crim. Proc. art. 11.073 (West 2013). Yet Vasquez delayed in filing his third writ application bringing these claims until April of 2015. 1 SHCR-03 115. And after the CCA denied his claim on August 25, 2021, he waited 553 days before filing the instant motion for authorization. SHCR-03 Order Denying Relief (August 25, 2021); Motion at 1.

In considering his 60(b) motion, the district court found that "[t]he scientific principles underlying Vasquez's new forensic evidence were available to him many years ago." *Vasquez v. Lumpkin*, No. 2:05-CV-59, ECF 60 pg. 13 (fn. 4). "Vasquez sat on the factual basis for his Rule 60(b) motion rather than expeditiously seeking federal relief." *Id.* This is as

true of the instant motion as it was for the Rule 60(b) motion. A prisoner seeking state postconviction relief might avoid this predicament by filing a "protective" petition in federal court and asking the federal court to stay and abey the federal habeas proceedings until state remedies are exhausted. *See Rhines v. Weber*, 544 U.S. 269, 278 (2005); *Pace v. DiGuglielmo*, 544 U.S. 408, 416 (2005). Vasquez has not demonstrated that the factual predicate of his claims could not have been discovered earlier through the exercise of due diligence. The junk-science claims (one, two, and seven) should not be authorized under § 2244(b)(2)(B)(i).

### B.  Vasquez cannot demonstrate that no reasonable factfinder would have found him guilty but for some constitutional error.

Concerning the second requirement of the two-part test in § 2244(b)(2)(B)(i)-(ii), Vasquez must make a prima facie showing that "the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2244(b)(2)(B)(ii). This standard has been described as "a strict form of 'innocence,' . . . roughly equivalent to the Supreme Court's definition of

'innocence' or 'manifest miscarriage of justice' in [*Sawyer v. Whitley*, 505 U.S. 333 (1992)]." *Johnson*, 442 F.3d at 911 (citing Randy Hertz & James S. Liebman, Federal Habeas Corpus Practice & Procedure § 28.3e, at 1459–60 (5th ed. 2005)).

The record shows that on March 5, 1998, Richard Vasquez was the only adult at his parents' house and that he was caring for his infant daughter and Miranda, his girlfriend's four-year-old daughter. 3 SHCR-03 668–69 (nos. 1–11). At about 10:30 to 11:00 A.M., Rosie Cardenas, the family's backyard neighbor, saw a little girl in the Vasquez backyard. *Id.* at 669 (no. 17). She heard Vasquez yell to the little girl, "Vas a ver, pendeja!", which she interpreted to mean "You're going to get it, stupid!" because of the anger in his voice. *Id.* at 669–70 (nos. 18, 19).

Back in the house, Vasquez hit Miranda at least three times, but in his written statement and his testimony before the jury, he said that he could not remember how many times he hit her, or how, or where. *Id.* at 670 (nos. 20–22). Dr. James Michael Burke, a pediatric neurosurgeon, Dr. Bruce Henderson, a pediatric surgeon, and Dr. Lloyd White, the Nueces County Medical Examiner, testified that Miranda sustained severe and serious brain damage. *Id.* (no. 23). Because of the repeated

and multiple blows to the head that Vasquez gave her, Miranda was brain dead either when he stopped hitting her or by the time she arrived at the hospital. *Id.* At the hospital, Leann Box, a Sexual Assault Nurse Examiner, examined Miranda and found about twenty-three bruises and injuries on her body, some recent and some old, and determined that Miranda had been sexually assaulted. *Id.* at 671 (nos. 36–38). Miranda died the next day. *Id.* (no 42).

The declarations and "new evidence" that Vasquez presents in conjunction with his Successive Petition and Motion for Authorization fail to surmount the evidence against him and demonstrate that he is actually innocent. Vasquez therefore fails to satisfy § 2244(b)(2)(B)(ii). Since Vasquez fails to show both that: (1) the factual predicates of his claims could not have been discovered earlier (§ 2244(b)(2)(B)(i)); and (2) the facts, if proven, establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found Vasquez guilty of capital murder (§ 2244(b)(2)(B)(ii)), Vasquez is not entitled to file a successive petition in district court. Accordingly, the Court should deny Vasquez's Motion for Authorization.

### III. Even If Jurisdiction Exists, Vasquez's Proposed Claims Are Barred by the Statute of Limitations.

The Court should deny authorization to file a successive habeas petition because all of the claims Vasquez seeks to raise are time-barred by the AEDPA one-year statute of limitations. This Court has "the authority to deny a motion to authorize based on timeliness." *In re Campbell*, 750 F.3d 523, 532 n.9 (5th Cir. 2014); *see also In re Mathis*, 483 F.3d 395, 399 (5th Cir. 2007) (stating that, in addition to addressing whether a petition is successive, this Court "must also consider" whether the petition "was timely filed"); 28 U.S.C. § 2244(d)(1)(D). As discussed above, Vasquez could have discovered the factual predicate for his cocaine-evidence claims at trial, and certainly before his initial federal habeas proceedings in 2002. And Vasquez's junk-science claims are also time-barred. Although the scientific evidence that Vasquez cites was published in and around 2006, Vasquez did not bring his junk-science claims to state court until 2015 and only now proposes these claims for federal relief.

At the latest, the limitation period starts to run from the date on which "the factual predicate of the claim or claims presented could have

been discovered through the exercise of due diligence."[9] 28 U.S.C. § 2244(d)(1)(D). Section 2244(d)(1)(D) applies to those who could not discover the factual predicate for their claims, not those who "sleep on their rights." *Fisher v. Johnson*, 174 F.3d 710, 715 n.14 (5th Cir. 1999). It is the knowledge of relevant facts, not their legal significance, which starts the limitations period. "[T]his means the date a petitioner is on notice of the facts which would support a claim, not the date on which the petitioner has in his possession evidence to support his claim." *In re Davila*, 888 F.3d at 189 (quoting *In re Young*, 789 F.3d 518, 528 (5th Cir. 2015)). Section 2244(d)(1)(D) does not "convey a statutory right to an extended delay . . . while a habeas petitioner gathers every possible scrap of evidence that might . . . support his claim." *Flanagan v. Johnson*, 154 F.3d 196, 199 (5th Cir. 1998); *Osborne v. Hall*, 934 F.3d 428, 432–33 (5th Cir. 2019); *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000) ("[T]he time commences when the factual predicate 'could have been discovered through the exercise of due diligence,' not when it was actually discovered

---

[9]    The record does not reflect that any unconstitutional "State action" impeded Vasquez from filing for federal habeas corpus relief prior to the end of the limitations period. 28 U.S.C. § 2244(d)(1)(B). And the claims do not concern a constitutional right recognized by the Supreme Court within the last year and made retroactive to cases on collateral review. 28 U.S.C. § 2244(d)(1)(C).

by a given prisoner," or "when the prisoner recognizes [the] legal significance [of important facts]."). "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).

Vasquez contends that the one-year limitations period for his claims began to run in March 2019. Motion at 6. But a distinction must be drawn for the claims predicated on the allegedly false cocaine evidence and the claims predicated on alleged junk science. For the cocaine-evidence claims, Vasquez offers Dr. Ronald Backer's Declaration dated May 1, 2019, and other exhibits that point to March 2019 as the date that the complained-of discrepancy was discovered by counsel. Motion at 6; Movant's Ex. J–L at 454–71. Vasquez is not relying on new information; the toxicology report with the discrepancy between "Drugs of Abuse Screen" and "Confirmed GC/MS" was available at trial. CR 406. Therefore, Vasquez could have discovered this purported error well before 2019, and indeed as far back as the trial in 1999. As Vasquez's own exhibits reveal, the distinction between "Drugs of Abuse Screen" and

"Confirmed GC/MS" was known at the time of trial, and the discrepancy follows naturally from this distinction. Movant's Ex. N at 489. Even if Vasquez had the benefit of tolling during the pendency of his four state writ applications, his cocaine-evidence claims are barred by AEDPA's limitations period.

Because Vasquez has not shown that he could not have discovered the factual predicate of his cocaine-evidence claims until after his conviction became final, the one-year limitations period for Vasquez's cocaine-evidence claims runs from the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review. § 2244(d)(1)(A), 2244(d)(1)(D). Vasquez's conviction became final on January 1, 2002, ninety days after his direct appeal was affirmed. *See Roberts v. Cockrell*, 319 F.3d 690, 693–95 (5th Cir. 2003) (finality determined by when time for filing further appeals expires); Sup. Ct. R 13(1). Absent tolling, the one-year limitation period for filing a federal petition expired one year later on January 1, 2003.

Under AEDPA, "[t]he time during which a properly filed application for State post-conviction or other collateral review . . . is pending shall not count toward any period of limitation under this subsection." 28

U.S.C. § 2244(d)(2). Vasquez's first state habeas application tolled his limitations period until January 26, 2005. *Ex parte Vasquez*, Nos. WR-59,201-01, WR-59,201-02, 2005 WL 287504. Vasquez's state writ application therefore extended Vasquez's deadline from January 1, 2003, until January 26, 2006. As a result, the cocaine-evidence claims are at least 6,000 days late.

Vasquez does not specify when he believes that the limitations period for his junk-science claims began. *See* Motion at 6–7. The district court noted when denying Vasquez's recent Rule 60(b) motion that Vasquez could have pursued the basis of these claims several years prior to the time he filed his Rule 60(b) motion because the "principles underlying Vasquez's new forensic evidence were available to him many years ago." *Vasquez v. Lumpkin*, No. 2:05-CV-59, ECF No. 60 at 13 fn. 4. And Vasquez did not need confirmation of his claims before presenting them to the district court after being granted authorization to pursue his instant underlying claims in a second or successive federal habeas petition. The studies that Vasquez cites for his proposition that the State employed junk science date back to 2004, 2005, 2006, 2008, 2009, 2011, 2012, 2014, and 2019. Movant's Ex. 1 at 34–37; Movant's Ex. D-1 at 25–

344; Movant's Ex. D-3–D-6, D-8, D-10–D-14. Because the factual predicate for these claims could have been discovered, at least in part, over a decade ago through the exercise of due diligence, Vasquez's junk-science claims are barred by AEDPA's limitations period.

Even if the clock started to run when the so-called junk science writ provision became available in Texas on September 1, 2013[10], Vasquez was on notice of the scientific developments that might substantiate his junk science claims and could have filed his state writ application immediately. But Vasquez delayed for well over a year, until April of 2015, to file his third state writ application bringing his junk-science claims, thus exhausting a one-year limitations period. 1 SCHR-03 15. As discussed in Section V(A), Vasquez cannot demonstrate that he is actually innocent, and therefore cannot employ the *McQuiggin* "gateway." *McQuiggin*, 569 U.S. at 386. And although Vasquez does not argue that he is entitled to equitable tolling, his failure to file a protective petition weighs against the application of equitable tolling. *See* Motion at 5–6; *Palacios v. Stephens*, 723 F.3d 600, 608 (5th Cir. 2013).

---

[10]   Tex. Code Crim. Proc. art. 11.073 (West 2013).

## IV.  Most of Vasquez's Proposed Claims Are Procedurally Defaulted.

Although Vasquez contends that his petition "is not barred by any procedural default in state court," Vasquez's proposed claims one, two, three, four, five, and six are indeed procedurally defaulted. Motion at 6. The procedural-default doctrine precludes federal habeas review when the last reasoned state-court opinion addressing a claim explicitly rejects it on a state procedural ground. *Ylst v. Nunnemaker*, 501 U.S. 797, 801, 803 (1991); *Matchett v. Dretke*, 380 F.3d 844, 848 (5th Cir. 2004). When the state court relies on an independent and adequate state procedural rule, federal habeas review is barred unless the petitioner demonstrates either cause and prejudice or that a failure to address the claim will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). The Fifth Circuit has long held that Texas's abuse-of-the-writ rule is ordinarily an "adequate and independent" procedural ground on which to base a procedural-default ruling. *Guidry v. Lumpkin*, 2 F.4th 472, 486 (5th Cir. 2021); *Gutierrez v. Stephens*, 590 F. App'x 371, 384 (5th Cir. 2014) (per curiam); *Matchett*, 380 F.3d at 848. Because Vasquez's proposed claims one through six were only brought in

his fourth state writ application and were dismissed as an abuse of the writ, they are procedurally defaulted. *See* SHCR-04 at 12–13.

Vasquez contends that "there is good cause for Vasquez's failure to have raised the cocaine issue as a stand-alone claim prior to the filing of his 2022 Application in state court." Motion at 6. Vasquez contends that he did not discover the complained-of discrepancy on the toxicology report until March 2019, that he received ineffective assistance of counsel at trial and in his post-conviction proceedings, that he is actually innocent of capital murder and the death penalty, and that he was prejudiced because the jury heard "demonstrably false evidence." *Id.* at 7–8.

As discussed in Section V(A), below, and Section II(B), above, Vasquez cannot demonstrate that he is actually innocent. And as the Director has repeatedly argued, Vasquez could have discovered the discrepancy on the toxicology report earlier through the exercise of due diligence. And further, as the state court found, the cocaine evidence was not false but rather "reliable and credible." 3 SHCR-03 653 (no. 299).

As for Vasquez's contention that he can excuse these procedural defaults under *Trevino v. Thaler*, Vasquez has not made the requisite showing. 569 U.S. 413, 417 (2013). In *Martinez*, the Supreme Court held:

Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance of counsel at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

*Martinez v. Ryan*, 566 U.S. 1, 17 (2012).

*Martinez* creates a narrow exception to the procedural bar doctrine. The exception "treats ineffective assistance by a prisoner's state post-conviction counsel as cause to overcome the default of a single claim." *Davila v. Davis*, 137 S. Ct. 2058, 2062 (2017). A federal habeas petitioner relying on *Martinez* to show ineffective representation by state habeas counsel must meet three elements before the court can consider the underlying defaulted *Strickland*[11] claim. First, the petitioner must show that "his claim of ineffective assistance of counsel at trial is substantial— i.e., has some merit—." *Cantu v. Davis*, 665 F. App'x 384, 386 (5th Cir. 2016). Second, the petitioner must show that "habeas counsel was ineffective" for not raising the underlying *Strickland* claim. *Garza v. Stephens*, 738 F.3d 669, 676 (5th Cir. 2013). In reviewing this issue, the federal habeas court applies *Strickland* to "indulge a strong presumption

---

[11]     *Strickland v. Washington*, 466 U.S. 668 (1984)

that [habeas] counsel's conduct falls within the wide range of reasonable professional assistance." 466 U.S. at 689. Third, even after a showing of cause flowing from habeas counsel's representation, the petitioner must demonstrate actual prejudice. *Canales v. Stephens*, 765 F.3d 551, 571 (5th Cir. 2014).

As discussed in Section V(D), Vasquez's argument concedes that the discrepancy in the toxicology report could have been discovered by trial counsel, and therefore concedes that the cocaine-evidence claims are time-barred and that they are ineligible for consideration in a subsequent writ under § 2244(b)(2)(B)(i). Further, his argument concedes that the discrepancy should have been discovered by prior post-conviction counsel. Even if his argument served to excuse the procedural default, his claim would be time-barred and impermissibly successive. And, as discussed in Section V(D), below, the underlying ineffective assistance of trial counsel claim has no merit. And because the state court found that the cocaine evidence was "reliable and credible," 3 SHCR-03 653 (no. 299), Vasquez cannot show that he was prejudiced. Vasquez cannot excuse his procedural default.

## V.    Vasquez's Claims are Meritless.

Even if Vasquez could surmount the hurdles of jurisdiction, limitations, and default, his proposed claims should all be denied in a subsequent writ petition because they are without merit. Regarding the claims that have been exhausted in state court, under § 2254(d), relief may not be granted unless the state court adjudication (1) "'was contrary to' federal law then clearly established in the holdings of" the Supreme Court, (2) "'involved an unreasonable application of' such law," or (3) "'was based on an unreasonable determination of the facts' in light of the record before the state court." *Harrington v. Richter*, 562 U.S. 86, 100 (2011) (quoting § 2254(d)(1)–(2)) (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). Vasquez has not made this showing.

A state court decision is contrary to clearly established federal law if it "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or confronts facts that are "materially indistinguishable" from relevant Supreme Court precedent yet reaches an opposite result. *Williams*, 529 U.S. at 405–06. A state court unreasonably applies clearly established federal law if it correctly identifies the governing Supreme Court precedent but unreasonably

applies it to the facts of a particular case. *Id.* at 407–09. To analyze unreasonable application, a federal court "must determine what arguments or theories supported or . . . could have supported[] the state court's decision[] and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Richter*, 562 U.S. at 102. Thus, "a state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree" on the correctness of the state court's decision. *Id.* at 101 (quotation omitted).

Further, it is the state court's "ultimate decision" that is to be tested for unreasonableness and not every jot of its reasoning. *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc). Indeed, state courts are presumed to "know and follow the law." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). And, even if the state court's decision lacks reasoning, § 2254(d) applies and the petitioner must overcome it. *Richter*, 562 U.S. at 98.

AEDPA also provides that state court factual findings "shall be presumed to be correct" unless an inmate carries "the burden of rebutting

the presumption of correctness by clear and convincing evidence."
§ 2254(e)(1). "The presumption of [factual] correctness not only applies
to explicit findings of fact, but it also applies to those unarticulated
findings which are necessary to the state court's conclusions of mixed law
and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001).

Finally, the Fifth Circuit has held that even where a state court is
shown to be unreasonable, relief is discretionary unless the "law and
justice require it." *Crawford v. Cain*, 55 F.4th 981, 993–96 (5th Cir. 2022).
And law and justice only require habeas relief when a petitioner shows
"factual innocence." *Id.* In other words, notwithstanding any state court
factual or legal error, habeas relief may be denied if the petitioner is
factually guilty. *Id.*

## A. Vasquez cannot demonstrate actual innocence (Claims 1 and 2)

In proposed claims one and two, Vasquez contends that he is
actually innocent of "capital murder" and the "death penalty." Movant's
Ex. 1 at 47, 49. But freestanding claims of actual innocence are not
cognizable on federal habeas review. *Reed v. Stephens*, 739 F.3d 753, 766

(5th Cir. 2014).[12] The Supreme Court has held, however, that AEDPA's statute of limitations can be overcome by a showing of actual innocence. *See McQuiggin s*, 569 U.S. at 386. Actual innocence means factual innocence and not mere legal insufficiency. *United States v. Jones*, 172 F.3d 381, 384 (5th Cir. 1999) (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)). And a petitioner cannot meet the threshold requirement to reach the actual-innocence "gateway" "unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). Furthermore, to be credible, such a claim requires a petitioner to support his allegations with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial. *Schlup*, 513 U.S. at 324.

Although Vasquez contends that he has the required new evidence, alleging that "without the false evidence on cocaine and the junk science

---

[12]     This Circuit noted that in *Herrera* the Supreme Court "made clear that federal habeas relief would only be available if there was no state procedure for making such a claim." *Lucas v. Johnson*, 132 F.3d 1069, 1074–75 (5th Cir. 1998). Texas has an avenue by which to pursue innocence claims. *Ex parte Elizondo*, 947 S.W.2d 202, 208–09 (Tex. Crim. App. 1996).

that marred his trial," no rational juror would have found him guilty or imposed the death penalty, the state court's findings on habeas, which are entitled to a presumption of correctness, bely this argument entirely. Movant's Ex. 1 at 47, 49. With regard to his allegations that the State employed junk science, the state court found that:

> 177. Based on the forgoing, the Court finds that, at trial [Vasquez] refuted his first version as to the [sic] Miranda's cause of death, namely, that she fell backwards off the stool and hit her head on the floor. He told Deputy Giannamore that Miranda had fallen off the stool because he did not want to tell him that he had hit Miranda. He lied to Deputy Giannamore. [Vasquez's] first version that Miranda feel [sic] off the stool is therefore false.
> 178. [Vasquez's] testimony to the jury that his second version that he gave at trial, that Miranda fell forward into and hitting the sink and/or faucet, which precipitated her death, is also false. There is no evidence, other than his testimony, to support his claim that falling forward into the sink caused her death.

3 SHCR-03 620 (nos. 177–78).

> 240. Each of [Vasquez's] above experts stated that he or she had read the pertinent record of the case, which would have included, at a minimum, [Vasquez's] written statement and his trial testimony in order to know how the fatal injury occurred. As shown above by the quotes attributed to each expert, each relied on the testimony of Deputy Giannamore when he asked [Vasquez] what happened, that [Vasquez] answered, "she was brushing her teeth in the hall bathroom and fell off a wooden stool hitting her head," [34 RR 20], and from [Vasquez's] written statement. Variations of the quoted statement trickled down to the experts named and quoted

above as well as to several others. But, this is the very statement he refuted, repudiated, renounced and rejected when he testified before the jury that Miranda fell forward into the sink hitting her head and face on the faucet or the sink, and which he admitted before the jury was inconsistent with his written statement that they heard at the beginning of the trial. [Vasquez] literally changed his account of how Miranda fell off the stool. [Vasquez's] written statement that Miranda "fell off a wooden stool hitting her head" is therefore false. Inexplicably, not a single expert discussed or apparently considered, nor even mention, [Vasquez's] trial testimony that Miranda fell forward into the sink. Because the Court has found that [Vasquez's] first version of the bathroom event is false based on [Vasquez's] testimony at trial, the experts named above based their opinions on false testimony. The Court finds that there is no factual basis to support the opinions and representations of each of the experts that [Vasquez] now relies upon with regard to short fall injuries.

3 SHCR-03 634 (no. 240). In sum, the state court found that, because Vasquez's account that Miranda fell of the stool backwards and his account that she fell forward were both false, all of the expert opinions that Vasquez now offers to substantiate his short fall "junk science" claims were based on false testimony. *Id.*

And with regard to the alleged "false" evidence of cocaine, the state court found that "[Vasquez] presented no evidence that the results of the subsequent test were not true other than the entry of 'Negative' in the Toxicology Report." 3 SHCR-03 653 (no. 293). Rather, the state court found that "[t]he evidence from Dr. White based on the confirmation tests

results from Dr. Backer's report that showed that cocaine and its metabolite were present in Miranda's blood is reliable and credible evidence." *Id.* (no. 299). Vasquez cannot support his claim of actual innocence with new, credible evidence. Claims one and two, apart from being non-cognizable in federal court, are meritless and could not serve as cause to excuse any procedural default.

## B.    Vasquez's right to due process under *Brady* was not violated. (Claim 3)

Next, Vasquez contends that the State violated *Brady* by failing to disclose the allegedly false cocaine evidence. Movant's Ex. 1 at 50. The three components of a *Brady* violation are (1) "the evidence at issue is favorable to the defense, either because it is exculpatory or impeaching" (2) "the prosecution suppressed the evidence", and (3) "the evidence is material." *Murphy v. Davis*, 901 F.3d 578, 597 (5th Cir. 2018) (citing). A "*Brady* claim fails if the suppressed evidence was discoverable through reasonable due diligence." *Guidry*, 2 F.4th at 487 (quoting *Reed*, 739 F.3d at 781); *Prible v. Lumpkin*, 43 F.4th 501, 514 (5th Cir. 2022).

The first element of Vasquez's *Brady* claim is not satisfied because the cocaine evidence is not exculpatory. As the state court found, "[t]he evidence from Dr. White based on the confirmation tests results from Dr.

Backer's report that showed that cocaine and its metabolite were present in Miranda's blood is reliable and credible evidence." 3 SHCR-03 653 (no. 299). Because the cocaine evidence is reliable despite the discrepancy, it is inculpatory rather than exculpatory.

Further, the State did not suppress the evidence. Vasquez does not dispute that he had access to the complained-of toxicology report prior to trial. *See* Movant's Ex. 1 at 50–51. And, in support of his argument that the statute of limitations period should only begin to run in March of 2019 he proffered documents that show that nobody noticed the discrepancy until that time. Motion at 6; Movant's Ex. J–L at 454–71. That Vasquez's trial attorney attests that he never saw the discrepancy does not mean that the State suppressed it. *Guidry*, 2 F.4th at 487. "*Brady* does not obligate the State to furnish a defendant with exculpatory evidence that is fully available to the defendant through the exercise of reasonable diligence." *Kutzner v. Cockrell*, 303 F.3d 333, 336 (5th Cir. 2002). As the Director has repeatedly argued, the complained-of discrepancy could have been discovered by Vasquez through due diligence before his trial in 1999.

And finally, Vasquez cannot satisfy the materiality element. Suppressed evidence is material and causes prejudice "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985); *Prible*, 43 F.4th at 521.

Vasquez contends that the "materiality of the cocaine evidence has already been judicially determined." *Id.* at 19. But the district court in Vasquez's prior federal writ petition did not hang its determination that Vasquez was not prejudiced by his counsel's performance on the strength of the cocaine evidence alone. *Vasquez v. Quarterman*, 2008 WL 859147, at *7. Rather, that court held that the evidence about the severity of her head injuries, bruising "throughout her body," Vasquez's lies to doctors and the 911 operator, and the cocaine evidence "provided substantial basis for the jury's *mens rea* determination." *Id.* Vasquez's *Brady* claim is without merit.

## C.    The State did not present false evidence. (Claims 4 and 5)

In his proposed claims four and five, Vasquez contends that the "false" evidence of cocaine, whether presented knowingly through prosecutorial misconduct (claim 4) or unknowingly (claim 5), violated

Vasquez's right to due process. *See* Movant's Ex. 1 at 52–56. But as discussed in Section V(A), above, the cocaine evidence was not false but rather "reliable and credible." 3 SHCR-03 653 (no. 299). The premise for both these claims therefore fails, because the State did not present false evidence, whether knowingly or unknowingly. Further, while the State's unknowing use of false testimony is actionable under state law, it does not, under current Supreme Court law, give rise to a federal constitutional violation. *See Kinsel v. Cain*, 647 F.3d 265, 271–72 (5th Cir. 2011) (affirming the denial of federal habeas relief because the Supreme Court has not recognized a constitutional violation for the unknowing use of false testimony); *Pierre v. Vannoy*, 891 F.3d 224, 230 (5th Cir. 2018) (Ho, J., concurring), *as revised* (Jun. 7, 2018), *cert. denied*, 139 S. Ct. 379 (2018) ("There is a long line of unbroken precedent from both this Court and the U.S. Supreme Court holding that false trial testimony does not implicate a defendant's due process rights if the State was unaware of the falsity at the time the testimony was given"). The district court would be prohibited from creating and applying new rules retroactively in habeas proceedings such as this one. *Teague v. Lane*, 489 U.S. 288 (1989).

### D.    Trial counsel's failure to discover the cocaine evidence discrepancy does not present a Sixth Amendment violation. (Claim 6)

In proposed claim six, Vasquez contends that his trial counsel was ineffective for failing to discover the discrepancy in the toxicology report. Movant's Ex. 1 at 56–57. Although elsewhere Vasquez contends that the discrepancy could not have been discovered prior to 2019 through the exercise of due diligence, here he argues that trial counsel's failure "obviously" fell below an objective standard of reasonableness. *Id.* at 56. This claim must fail because its conceit that the discrepancy should have been discovered by trial counsel admits that the claim is impermissibly successive and time-barred. *See* Sections II(A) and III, *supra*.

Vasquez cannot show that he was prejudiced by his trial counsel's allegedly deficient performance. The state court found that the cocaine evidence was "reliable and credible." 3 SHCR-03 653 (no. 299). Vasquez cannot show a reasonably probability that but for his counsel's failure to notice or challenge the cocaine evidence, the results of the proceeding would have been different. The severity of Miranda's head injuries, the bruising throughout her body, the fact that he was the sole adult in the home, the evidence that Miranda had been sexually assaulted, and

Vasquez's lies together provided ample evidence of Vasquez's culpability.

And the state court found that:

> 247. Chemist Nguyen testified that the hair found in a plastic bag in a trash can by the CSI techs matched the hair sample taken from Miranda at the morgue. He described the three stages of the growth of hair: the young, new and firm hair, the in-between age; and the old, fading and ready to fall off hair. Of course, he used the scientific or biologic terms for the three stages of the growth of hair. He testified that the roots of Miranda's hair had been broken. This meant that Miranda's hair had been pulled out, ripped out and torn off her head. [Vasquez] pulled, ripped and tore off parts of Miranda's hair before, during or after he hit her repeatedly. If nothing else does, this clearly shows his intent to kill her.

3 SHCR-03 644 (no. 247). This claim is without merit.

## E. The State's alleged use of "junk science" presents no constitutional violation. (Claim 7)

In proposed claim seven, Vasquez contends that the evidence of car-crash equivalency and short falls presented at trial was false, and therefore violated his right to due process. Movant's Ex. 1 at 57–58. In light of the state court's findings in Vasquez's third state habeas application, this claim is unlikely to prevail.

First, to the extent Vasquez is appealing the TCCA's denial of his 11.073 claim, he does not assert a constitutional violation for this Court. Indeed, "[e]nacted in 2013. . . Article 11.073 provides a statutory, non-

constitutional pathway to habeas relief in cases in which 'relevant scientific evidence' was not available to be offered at a convicted person's trial or contradicts scientific evidence the state relied on at trial.'" *Ex parte Kussmaul*, 548 S.W.3d 606, 633 (Tex. Crim. App. 2018). Since the CCA denied all of Vasquez's arguments predicated on Article 11.073 on the merits, such a substantive state law ruling precludes this Court from entertaining these claims. *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991), *holding modified by Martinez v. Ryan*, 566 U.S. 1 (2012); *Wainwright v. Sykes*, 433 U.S. 72, 81 (1977) ("[I]t is a well-established principle of federalism that a state decision resting on an adequate foundation of state substantive law is immune from review in the federal courts."); *Herb v. Pitcairn*, 324 U.S. 117, 125–26 (1945) ("Our only power over state judgments is to correct them to the extent that they incorrectly adjudge federal rights.").

Regardless, the state court made the finding that Vasquez's "credibility is almost non-existent." 3 SHCR-03 626 (no. 205). This credibility determination is supported by the record and is "virtually unreviewable" by the district court. *Ford v. Davis*, 910 F.3d 232, 234–35 (5th Cir. 2018) (citing *Pippin v. Dretke*, 434 F.3d 782, 792 (5th Cir. 2005));

28 U.S.C. § 2254(e)(1). The state court found that "[Vasquez's] accounts that Miranda fell backwards off the stool or fell forward into the sink are contradictory and inconsistent with each other and were made only to dispel any notion that he was the cause of her death." 3 SHCR-03 626 (no. 205). The court found that Miranda was "hit repeatedly and multiple times on her head, face and body with sufficient force to cause her death." *Id.* (no. 206).

Regarding Dr. Burke's testimony that referenced Shaken Infant Syndrome, the state court found that "it is clear that Dr. Burke testified that the child abuse he described was the multiple blows to the head that caused severe and fatal damage to Miranda's brain" and "[h]is discussion about Shaken Infant Syndrome was separate and apart from his conclusions that Miranda received multiple blows to her head." *Id.* at 628–29 (no. 217).

Regarding Dr. Burke's testimony comparing Miranda's injuries with those suffered in a 65-mph car crash, the state court found that, as a neurosurgeon and pediatric neurologist, Dr. Burke must have reviewed numerous CT scans of both adults and children. *Id.* at 629 (no. 219). The state court found that Dr. Burke was comparing Miranda's CT scan to

the CT scans of others, including those involved in a car crash. *Id.* Dr. Burke's "point was that Miranda's CT scan showed essentially the same measure of brain damage that he had observed in the CT scan of another person who had been ejected from a vehicle going at 65 miles per hour." *Id.* As a result, Dr. Burke's testimony did not rely on speculation and conjecture, as Dr. Young asserted. *See id.* (nos. 218, 219).

The state court further found that Dr. Squire's theory that "'the circumstances of Miranda's death are most consistent with Second-Impact Syndrome'" was "not applicable in this case." *Id.* at 631 (no. 228). Scientific developments with respect to short fall injuries and second impact syndrome are irrelevant because "there is no evidence, testimony or medical record that supports the position that a short fall and/or a second impact injury occurred in this case." *Id.* (no. 231). The state court found that "[t]his case is not appropriate for obtaining a biomechanical consultation because Miranda did not fall backwards off a stool hitting her head." *Id.* at 672 (no. 48).

These excerpts merely scratch the surface of the state habeas court's systematic and thorough analysis of Vasquez's junk-science claims. And Vasquez points to nothing in the record to contradict the

state court's findings or salvage his experts' opinions from the state court's dismantling. *See* Movant's Ex. 1 at 57–58. As such, this claim is without merit and should be denied in a subsequent petition.

### F. Trial counsel's failure to investigate and counter sex assault evidence (Claim 8) and failure to present mitigating evidence (Claim 9) present no Sixth Amendment violation.

Finally, in his proposed claims eight and nine, Vasquez contends that his trial counsel was ineffective for failing to investigate and counter the evidence of sexual assault and for failing to investigate and present mitigating evidence. Movant's Ex. 1 at 58–61. These claims were considered and denied in Vasquez's original petition for federal relief, and this Court affirmed denial on claim nine. *Vasquez v. Quarterman*, 2008 WL 859147, at *2; *Vasquez v. Thaler,* 389 F. App'x at *10.

Vasquez did not reassert these claims along with this "new evidence" in his third and fourth state writ applications, which followed his first petition for federal habeas relief. *See* 1 SHCR-03 17–18, 25, 34–59; SHCR-04 5–6, 12–13, 40–41; *Ex parte Vasquez*, No. WR-59,201-03, 2016 WL 8808823, at *1; *Ex parte Vasquez*, No. WR-59,201-04, 2022 WL 17660560, at *1. Under *Pinholster*, review "is limited to the record that was before the state court that adjudicated the claim on the merits."

*Clark v. Thaler*, 673 F.3d 410, 416 (5th Cir. 2012) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 180–81 (2011)). The Supreme Court recognized that "[i]t would be contrary to [AEDPA's exhaustion requirement] to allow a petitioner to overcome an adverse state-court decision with new evidence introduced in a federal habeas court and reviewed by that court in the first instance effectively de novo." *Pinholster*, 563 U.S. at 182. Consequently, this Court cannot consider Vasquez's "new evidence" and can only consider the evidence before the state court that adjudicated the merits of instant claims eight and nine in his first state writ application. SHCR-01 at 16–52; *Ex parte Vasquez*, Nos. WR-59,201-01, WR-59,201-02, 2005 WL 287504. Authorization for claims eight and nine should be denied under § 2244(b)(1).

As the Director has repeatedly argued, Vasquez cannot demonstrate that he is actually innocent. Further, his alleged "new evidence" does not undermine the denial of these claims in his prior petition. These claims are without merit and should be denied in a subsequent petition for habeas relief.

## CONCLUSION

For the foregoing reasons, Vasquez's motion for authorization to file a successful habeas petition should be denied.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JOSH RENO
Deputy Attorney General
for Criminal Justice

EDWARD MARSHALL
Chief, Criminal Appeals


 s/ Willa Cockshutt
WILLA COCKSHUTT
Assistant Attorney General
State Bar No. 24118354
    *Counsel of Record*
P.O. Box 12548, Capitol Station
Austin, Texas 78711
Tel: (512) 936-1400
Fax: (512) 320-8132
Email: *willa.cockshutt@oag.texas.gov*

*Attorneys for Respondent*

## CERTIFICATE OF COMPLIANCE WITH ECF FILING STANDARDS

I do hereby certify that: (1) all required privacy redactions have been made pursuant to Fifth Circuit Rule 25.2.13; (2) this electronic submission is an exact copy of the paper document; and (3) this document has been scanned using the most recent version of a commercial virus-scanning program and is free of viruses.

s/ Willa Cockshutt
WILLA COCKSHUTT
Assistant Attorney General

## CERTIFICATE OF COMPLIANCE WITH RULE 32(A)

I do hereby certify that this brief complies with Federal Rule of Appellate Procedure 32(a)(7)(b) in that the non-exempt portion contains 12,545 words. Office 365, Century Schoolbook, 14 points.

s/ Willa Cockshutt
WILLA COCKSHUTT
Assistant Attorney General

**CERTIFICATE OF SERVICE**

I certify that on March 27, 2023, I electronically filed the foregoing notice with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit using the electronic case-filing system of the Court. The electronic case-filing system sent a "Notice of Electronic Filing" (NEF) to the following counsel of record, who consented in writing to accept the NEF as service of this document by electronic means:

Thomas M. Farrell
McGuireWoods, L.L.P.
845 Texas Ave., Suite 2400
Houston, TX 77002-2904
Email: tfarrell@mcguirewoods.com

 s/ Willa Cockshutt
WILLA COCKSHUTT
Assistant Attorney General

58